Tucker, P.
The object of the bill in this case is to recover compensation for an alleged deficiency in the quantity of a tract of land sold by the appellee to the appellant, and which the latter contends he had purchased by the acre. He therefore calls upon the appellee to say “ whether the agreement and understanding between the parties was not for the sale and purchase by the acre at 25 dollars.” To this the defendant an- , swers, that by the true construction of the agreement, the sale contracted for was a sale in gross; that the survey of Charles Kemper, referred to by the contract, was the datum on which the estimate of quantity was made; and that both parties-agreed finally to abide by that estimate, as, he insists, appears clearly by the agreement. In his answer to a similar interrogatory in the amended bill, he again insists on the same construction of the contract, and avers that “ such was the express and well understood intention of both contracting parties at the time of entering into it.” I concur with the defendant in his construction of the contract, and am clearly of opinion that though the purchaser here contracted to pay a sum which is the exact multiple of the estimated quantity of land, and in that sense may be said to have purchased by the acre, yet the survey of Kemper, and his \ estimate of the quantity, was referred to as the basis of the contract, and must be considered as settling between the parties the number of acres to be paid for. If this were at all doubtful from the terms of the agreement, it is placed beyond doubt by the answer of the defendant, which herein is directly responsive to the bill. Taking this then to be the true construction of the contract, it was a contract of risque, and the appellant was bound to abide the deficiency. The case, in this aspect, may be regarded as ruled by Fleet v. Hawkins, 6 Munf. 188. the principles of which appear to me unquestionable.
*48 The appellee, however, agreed lo have another survey> uPon Weaver’s insisting that he had bought by the-acre and suspected a deficiency. Whether this agreement was gratuitous or not, it was binding, since it was in the nature of a compromise of conflicting pretensions.
What this agreement was, must be taken from the answer of the defendant. Put it out of the case entirely, and then we have seen that the case is with him. Consider it as founding a new basis, and we must take it as he has stated it, because the plaintiff himself has no where set it forth,—because he has offered no proof in relation to it, and because the proof, such as it is, shews that that survey was to be final, and to settle the rights of the parties definitively. This is not only proved by Kemper to have been his impression, but it is strongly inferrible from the survey having been made (as upon its face it purports to be) for both parties, and in the presence of loth, as Russell proves. It is also inferrible from the execution by one, and the acceptance by the other, of a deed agreeable to that survey, and by the execution of bonds and a deed of trust by the appellant, and his acquiescence for four years ; all of which facts go decisively to evince the finality of the transaction, and the understanding of the parties that that survey should be binding. Four years after, however, the appellant has a new survey made, ex parte, and not by the county surveyor, and now alleges a mistake in Kemper’s calculation. I do not think we should disturb the transaction upon such a pretence. The calculation of the quantity of a tract of land is a matter that does not admit of absolute certainty. Though the science according to the principles of which it is made is one of the exact sciences, the subject on which it operates offers very frequently insuperable obstacles to exactness. Uneven ground, the meandering of watercourses, and the impediments of timber land are among these obstacles; while the carelessness and inattention of markers and *49 chain carriers perhaps yet more contribute to variations . A ^ . in surveys. Hence our courts have wisely said, that even in sales strictly by the acre, no compensation is to be made for deficiency, where the supposed deficit may fairly be presumed to arise merely from the variations of instruments or of mensuration. In one case it is said that a deficiency of 8 acres in 552 was not too great to be set down to the account of such variations. In this case the deficit is very little more, and on this ground ought not to be regarded. But, in fáct, we are not left without some means of accounting for the difference between the surveys here. In the mensuration of ,the first line of the survey, which is about a mile and three quarters long, the surveyors differ two poles in length. Now it cannot be doubted that one pole or 5£ yards in a mile is a small variation in measurement; yet these two poles, in a survey averaging 288 poles in width, make a difference of about 3| acres. Then, in Cox's calculation table, he sets down his 9th line 5 poles short of his own measurement.* This, on the width of 246 poles, makes more than 7J acres. And lastly he does not run the line by which the conveyance was made, for he runs down the middle of the stream and cuts the island in two, although Carter has conveyed the whole bed and the whole island, and is responsible for them both. According to my calculation, this will account for three acres more; making, in the whole, 14 acres, and leaving the residue of some 7 acres to be accounted for from other trivial variations of instruments and measurement.
In every view of the case, I am of opinion to affirm the decree.
The other judges concurring, decree affirmed.

 In the copy of the record which the reporter had, the mistake here mentioned by the president did not appear.